# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **BETTY M. BUSH,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv00055 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I will vacate the final decision of the Commissioner denying benefits and remand the plaintiff's claims for an award of benefits in accordance with this Memorandum Opinion.

*I. Background and Standard of Review*

Plaintiff, Betty M. Bush, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C.A. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bush protectively filed an initial application for DIB on December 7, 1999, alleging disability as of August 6, 1999, and later amended the onset date to August 16, 1999, based on back pain, leg pain, numbness of the feet, anxiety and depression. (R. at 133-36, 139, 168.) This application was denied by decision dated September 12, 2000. (R. at 24.) The Appeals Council denied Bush's request for review, and she did not pursue this claim further. (R. at 24.) Bush then filed a subsequent DIB application on or about December 20, 2000, again alleging disability as of August 16, 1999, based on depression. (R. at 331-33, 374.) Her claim was denied by decision dated July 24, 2002. (R. at 44-53.) The Appeals Council denied Bush's request for review. (R. at 37-38.) Bush then filed a civil action in this court, but on the Commissioner's motion to remand the case for failure to locate Bush's file, the case was remanded by district court order dated April 21, 2003. (R. at 302-05.) By order dated June 4, 2003, the Appeals Council remanded Bush's claim in order to reconstruct the record, provide Bush an opportunity to appear at a hearing and to issue a new decision based on the record as reconstructed. (R. at 300-01.) During the time that Bush's case was pending before this court, she protectively filed

subsequent applications for DIB and SSI on January 22, 2003, again alleging disability as of August 16, 1999, based on back pain and spasms and burning and aching of the heels. (R. at 338-41, 413, 682-85.) Bush's claims were denied initially and on reconsideration. (R. at 687-89, 692, 694-96.) Bush filed a request for a hearing before an administrative law judge, ("ALJ"). (R. at 316.) The applications filed on December 20, 2000, and January 22, 2003, were consolidated for hearing and decisional purposes. (R. at 25.) A hearing was held on January 13, 2004, and a supplemental hearing was held on August 23, 2004. (R. at 84-100, 101-14.) Bush was represented at both hearings. (R. at 84, 101.)[1]

By decision dated August 27, 2004, the ALJ denied Bush's claims. (R. at 24-31.) The ALJ found that Bush met the nondisability insured status requirements of the Act for disability purposes through the date of the decision. (R. at 31.) The ALJ found that Bush had not engaged in substantial gainful activity since August 16, 1999. (R. at 31.) The ALJ also found that Bush suffered from the medically determinable impairment of fibromyalgia,[2] but that she did not suffer from any severe impairments. (R. at 31.) Therefore, the ALJ concluded that Bush was not disabled as defined by the Act and was not eligible for benefits. (R. at 31.) *See* 20 C.F.R. §§ 404.1520(c), 416.920(c) (2007).

After the ALJ issued his decision, Bush pursued her administrative appeals, (R.

---

[1]Bush was represented by Eric Reese, a paralegal with the law firm of Browning, Lamie & Gifford, P.C.

[2]Fibromyalgia is a chronic condition causing pain, stiffness and tenderness of the muscles, tendons and joints. Fibromyalgia also is characterized by restless sleep, awakening feeling tired, fatigue, anxiety, depression and disturbances in bowel function. Fibromyalgia was formerly known as fibrositis. *See* http://www.medicinenet.com/fibromyalgia/article.htm.

-3-

at 19), but the Appeals Council denied her request for review. (R. at 13-14.) Bush then filed an action seeking review of the ALJ's unfavorable decision, which stood as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2007). By opinion dated October 25, 2005, this court vacated the Commissioner's decision denying benefits and remanded Bush's claims to the Commissioner for further proceedings. In particular, this court found that substantial evidence did not support the ALJ's decision that Bush did not suffer from a severe mental impairment.

On remand, an additional hearing was held before an ALJ on October 2, 2006. (R. at 824-57.) Bush was represented by counsel at this hearing. (R. at 824.) By decision dated November 9, 2006, the ALJ again denied Bush's claims. (R. at 742-53.) The ALJ found that Bush met the nondisability insured status requirements of the Act for disability purposes through December 31, 2004, but not thereafter. (R. at 752.) The ALJ found that Bush had not engaged in substantial gainful activity since August 16, 1999. (R. at 753.) The ALJ found that Bush suffered from severe fibromyalgia, high borderline to low average intellectual functioning, reading ability at least at the sixth-grade level and depressive disorder. (R. at 753.) The ALJ further held that the Bush had the residual functional capacity to perform unskilled and semi-skilled work-related activities at all exertional levels. (R. at 753.) The ALJ found that, based on this residual functional capacity, Bush could perform her past relevant work as a nurse's aide, an inspector and a furniture stainer. (R. at 753.) Therefore, the ALJ concluded that Bush was not disabled as defined by the Act and was not eligible for benefits. (R. at 753.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007).

After the ALJ issued his decision, Bush pursued her administrative appeals, (R.

at 19), but the Appeals Council denied her request for review. (R. at 740-41.) Bush then filed an action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2007).

This case is before this court on Bush's motion for summary judgment filed on November 26, 2007, and the Commissioner's motion for summary judgment filed January 25, 2008.

*II. Facts and Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2007). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the

claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

-6-

The issue in this case is whether substantial evidence exists in the record to support the ALJ's finding as to Bush's residual functional capacity. The ALJ found that Bush had the residual functional capacity to perform unskilled and semi-skilled work-related activities at all exertional levels. Based on my review of the evidence contained in the record, I find that substantial evidence does not support the ALJ's finding as to Bush's mental residual functional capacity.

Bush was born in 1961, (R. at 87, 133, 331), which classifies her as a younger person under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2007). She has an eighth-grade education and training to be a nurse's aide. (R. at 87-88, 145, 351, 390.) She has past relevant work experience as an inspector, an assembler, a stainer at a furniture factory and a nurse's aide. (R. at 140, 152, 174, 346, 358, 380-82, 385, 398, 429.) Based on his finding on Bush's residual functional capacity, the ALJ found that Bush could perform her past relevant work as a nurse's aide, an inspector and a furniture stainer. (R. at 753.) Therefore, if the ALJ's finding as to Bush's residual functional capacity is not supported by substantial evidence, neither is his finding as to her ability to perform her past relevant work.

The court's previous opinion on Bush's claims[3] sets forth in great detail her past history of medical and psychological evaluation and treatment. Those facts will not be repeated here, except where necessary to explain the court's decision. The undisputed evidence contained in the record shows that Bush has complained of suffering from depression and anxiety since as early as 1999. (R. at 213, 470.) The

---

[3] See the Memorandum Opinion entered on October 25, 2005, in consolidated cases 1:02cv00165 and 1:05cv00022.

undisputed evidence also shows that she has been diagnosed with and treated with medication for depression by both her treating physician and mental health specialists since 1999. (R. at 211, 213, 468, 470, 512-14.) While, it appears that Bush's depressive symptoms have, on occasion, been helped by medication, (R. at 453, 455, 457, 614), it also appears that Bush has suffered from financial problems, which have made it difficult for her to continue taking her medications as prescribed. (R. at 552.) Over the years, Bush also has complained of, and been treated for, anxiety attacks, difficulty concentrating and short-term memory problems. (R. at 512, 552.) Perhaps most pertinent to the issue before the court, however, is the fact that every psychological expert who has expressed an opinion on the issue has placed greater restrictions on Bush's work-related activities than those found by the ALJ.

Sharon J. Hughson, Ph.D., a clinical psychologist, completed an evaluation of Bush on February 7, 2002, at the referral of Disability Determination Services. (R. at 584-88, 592-96.) Hughson administered the Wechsler Adult Intelligence Scale - Third Edition, ("WAIS-III"), test, on which Bush obtained a verbal IQ score of 74, a performance IQ score of 77 and a full-scale IQ score of 74, placing her in the borderline range of intellectual functioning. (R. at 587, 595.) The Wide Range Achievement Test - Third Edition, ("WRAT-III"), revealed a fourth-grade reading score, a fourth-grade spelling score and a fifth-grade math score. (R. at 587, 595.) Hughson diagnosed Bush with a pain disorder associated with both psychological factors and a general medical condition, namely, chronic fibromyalgia, and borderline intellectual functioning. (R. at 588, 596.) She concluded that Bush was incapable of managing her own funds. (R. at 588, 596.) Hughson also completed a mental assessment, concluding that Bush had a good ability to maintain attention and

concentration and to understand, remember and carry out simple job instructions. (R. at 589-91, 597-98.) She found that Bush had a fair ability to follow work rules, to use judgment, to interact with supervisors, to understand, remember and carry out detailed job instructions and to maintain personal appearance. (R. at 589-90, 597-98.) In all other areas of functioning, Hughson found that Bush had poor abilities. (R. at 589-90, 597-98.)

On March 27, 2003, state agency psychologist Julia Jennings, Ph.D., completed a mental assessment, indicating that Bush was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to complete a workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to set realistic goals or make plans independently of others. (R. at 641-44.) In all other areas of functioning, Jennings found that Bush was not significantly limited, with the exception of the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, which she found no evidence of limitation. (R. at 641-42.) Jennings opined that, even with borderline IQ scores, as well as some anxiety and depression, Bush still would be capable of performing simple, unskilled, nonstressful work. (R. at 643.) She further opined that Bush's symptoms were partially credible. (R. at 643.) This assessment was affirmed by R.J. Milan Jr., Ph.D., another state agency psychologist, on June 23, 2003. (R. at 643.)

Jennings also completed a Psychiatric Review Technique form, ("PRTF"), on March 27, 2003, finding that Bush suffered from an affective disorder and mental retardation and that a residual functional capacity assessment was necessary. (R. at 645-59.) She concluded that Bush was mildly restricted in her activities of daily living, experienced moderate difficulties in maintaining social functioning, experienced moderate difficulties in maintaining concentration, persistence or pace and that there was insufficient evidence to determine whether she had experienced episodes of decompensation. (R. at 655.) This assessment was affirmed by psychologist Milan on June 23, 2003. (R. at 645.)

Bush saw Edward E. Latham, Ph.D., a clinical psychologist, on March 1, 2004. (R. at 667-70.) Latham administered the WAIS-III test, on which Bush obtained a verbal IQ score of 77, a performance IQ score of 85 and a full-scale IQ score of 79, placing her in the upper borderline range of intellectual functioning. (R. at 669, 670.) The WRAT-III also was administered, revealing deficiencies in reading, spelling and math. (R. at 668, 670.) Latham concluded that, even though Bush's full-scale IQ score fell at the upper end of the borderline deficient range, she appeared to be of overall low average intelligence, with some abilities in the average range. (R. at 669.)

Latham concluded that Bush could understand, retain and follow simple instructions and perform routine repetitive tasks. (R. at 669.) He rated her abilities to relate interpersonally and to handle everyday stressors as moderately impaired. (R. at 669.) Latham also completed a mental assessment, finding that Bush had a fair ability to follow work rules, to deal with the public, to use judgment, to maintain attention and concentration, to understand, remember and carry out detailed and simple job instructions, to maintain personal appearance and to demonstrate reliability. (R. at 671-73.) In all other areas of functioning, Latham deemed Bush's

abilities as poor. (R. at 671-72.)

Upon remand, Bush submitted records showing that she has continued to seek treatment for her physical and mental health problems. (R. at 775-813.) In 2005, Bush began treating with Dr. D. Semidei, M.D., a psychiatrist, for her ongoing problems with depression and anxiety. (R. at 784, 794.) On February 27, 2006, Dr. Semidei completed a Medical Source Statement Of Ability To Do Work Related Activities (Mental), stating that Bush suffered from marked or extreme limitations in all work-related mental activities. (R. at 779-80.)

On May 13, 2006, William F. Stanley, M.Ed., a licensed senior psychological examiner, and John Thurman, Ph.D., a licensed psychologist, performed a psychological evaluation on Bush at the Commissioner's request. (R. at 814-20.) Stanley and Thurman diagnosed Bush as suffering from a moderate to severe major depressive disorder, chronic, without psychotic features, a moderate to severe generalized anxiety disorder, a moderate to severe posttraumatic stress disorder, mild to moderate memory impairment and borderline intellectual functioning.(R. at 818-19.) Stanley and Thurman completed a Medical Source Statement Of Ability To Do Work Related Activities (Mental), stating that Bush suffered from marked limitations in all work-related mental activities except for the ability to understand, remember and carry out short, simple instructions. (R. at 821-22.)

Thomas Schacht, Ph.D., a psychological expert, was present and testified at Bush's October 2006 hearing. (R. at 838-53.) While Schacht's testimony provided a very detailed summary of Bush's psychological treatment history, it did not contain any independent diagnosis of Bush's psychological condition. Nor did Schacht offer any independent assessment of Bush's mental work-related abilities. At most,

Schacht's testimony raised a number of questions as to the credibility of Bush's complaints and the various mental health workers' opinions. Schacht did concede that if Bush's psychological impairment limited her work-related activities to the extent found by Dr. Semidei or by Stanley and Thurman, then her condition would disable her because it would meet a listed impairment. (R. at 850, 851.)

Based on my review of the record, I find that the ALJ erred in his weighing of the psychological evidence. While an ALJ is not bound by findings from a medical source as to a claimant's residual functional capacity, *see* §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946 (2007), an ALJ may not simply disregard uncontradicted expert opinions in favor of his own opinion on a subject that he is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir.1984). With regard to Dr. Semidei's assessment, the ALJ rejected it, in part, because it was not supported by "the rest of the objective mental evidence of record, or the testimony of the medical expert." (R. at 748.) With regard to Hughson's assessment, the ALJ rejected it, in part, because it was not supported by "the rest of the objective medical evidence of record." (R. at 749.) With regard to Latham's diagnosis and assessment, the ALJ rejected them because they were "not supported." (R. at 749.) With regard to Stanley's and Thurman's assessment, the ALJ rejected it because it, in part, was "not supported by the rest of the objective medical evidence of record." (R. at 750.)

Despite the fact that the ALJ repeatedly asserted that each of the opinions of these psychological experts was "not supported," the record shows that each of these experts agree that Bush suffered from mental impairments which resulted in significant limitations in her work-related abilities. Furthermore, even the state agency psychologists Jennings and Milan placed greater restrictions on Bush's work-

related abilities than found by the ALJ. Also, the testimony of the psychological expert, Schacht, contains no contradictory opinions. To the contrary, Schacht testified that, if the uncontradicted opinions of the treating and examining psychological experts were accepted, Bush's condition met a listed impairment.

For all of these reasons, I cannot find that substantial evidence supports the ALJ's findings as to Bush's mental residual functional capacity. I also hold that the proper disposition of this case is to remand to the Commissioner for an award of benefits. Bush's DIB claim has been pending since December of 2000, more than seven years. Her claims have been remanded to the Commissioner on two prior occasions, with the most recent remand specifically for further consideration of her mental impairments. The opinions of Bush's examining and treating psychological experts is uncontradicted, and the Commissioner's own expert concedes that, if these opinions are accepted, Bush's condition meets a listed impairment.

### III. Conclusion

For the foregoing reasons, the Commissioner's motion for summary judgment will be denied, Bush's motion for summary judgment will be granted, the Commissioner's decision denying benefits will be vacated, and Bush's claims will be remanded to the Commissioner for an award of benefits.

An appropriate order will be entered.

DATED: This 11th day of April, 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE